**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ALISON CARROLL,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COBB COUNTY FIRE<br>DEPARTMENT,<br><br>　　　　　Defendant. | CIVIL ACTION<br>File No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT
## FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Alison Carroll files her Complaint against Defendant Cobb County

Fire Department, showing the Court as follows:

### INTRODUCTION

1.

This is an action for gender discrimination, harassment, and retaliation arising

from, among other things, the Defendant's harassment, forced medical leave,

transfer, and constructive termination of Ms. Carroll due to her sex including

pregnancy and/or pregnancy-related medical conditions and filing of EEOC Charges

1

and other protected activity, in violation of Ms. Carroll's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. This is also an action for both interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Ms. Carroll is seeking actual damages, injunctive and equitable relief, compensatory and punitive damages, liquidated damages, attorneys' fees, and costs against Defendants.

## JURISDICTION AND VENUE

2.

Ms. Carroll's Title VII and FMLA claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3.

This Court is an appropriate venue for all of Ms. Carroll's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3) because all of the parties reside within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Ms. Carroll's claims occurred in this judicial district.

4.

All of Defendants' discriminatory and retaliatory conduct described herein was accomplished pursuant to unofficial policy and custom of the Cobb County Fire Department or was committed or authorized by officials whose acts can be fairly deemed to be the actions and official policy and customs of the Cobb County Fire Department.

## THE PARTIES

5.

Ms. Carroll is a female who resides in the Northern District of Georgia. She was employed by Cobb County Fire Department ("Cobb County") as a Firefighter from 2008 until her unlawful constructive discharge on or around July 7, 2013.

6.

Defendant Cobb County Fire Department is subject to the jurisdiction of this Court. The Cobb County Fire Department may be served with process by serving the Cobb County Attorney's Office at 100 Cherokee Street, Suite 350, in Marietta, Georgia 30090-7003.

7.

Ms. Carroll was an "employee" within the meaning of 42 U.S.C. § 2000e and 29 U.S.C. § 2601 et seq.

8.

3

Ms. Carroll was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 et seq. in that, at all relevant times, she worked for a covered employer, had worked for Cobb County for a total of 12 months, had worked at least 1,250 hours over the previous 12 months, the FMLA applies to Cobb County regardless of the number of its employees, and all other requisites were satisfied.

9.

Defendant Cobb County is an "employer" within the meaning of 42 U.S.C. § 2000e and 29 U.S.C. § 2601 et seq. *See also* 29 C.F.R. § 825.108(a). Defendant Cobb County is a public agency as defined by 29 U.S.C. § 203(x), and is subject to the FMLA regardless of the number of its employees.

**<u>ADMINISTRATIVE PROCEEDINGS</u>**

10.

Ms. Carroll filed a charge of discrimination with the Equal Employment Opportunity Commission on April 16, 2013, (hereinafter "First Charge"), within 180 days of the occurrence of the acts before then of which she complains, or in the case of  continuous harassment, within 180 days of the occurrence of at least one of the events in the series. Ms. Carroll also filed another charge of discrimination with the Equal Employment Opportunity Commission on August 7, 2013, (hereinafter

4

"Second Charge"), within 180 days of the occurrence of the acts of which she complains.

11.

Regarding the First Charge, Ms. Carroll received a notice of right to sue within the last ninety days and has complied with all other conditions precedent to this lawsuit. Upon receipt of her Notice of Right to Sue from the EEOC on the Cecond Charge, Plaintiff will seek to amend the Complaint to add gender discrimination and retaliation claims under Title VII.

### STATEMENT OF FACTS

12.

Ms. Carroll was employed by Cobb County as a Firefighter from April 21, 2008, through her constructive termination on or around July 7, 2013.

13.

In August 2012, Ms. Carroll told her supervisor, Nick Adams, that she was pregnant.  Shortly after that, many employees of Cobb County, including Roger Priest, Jimmy Taylor, and eventually Fire Chief Sam Heaton, knew she was pregnant.  She was pregnant at that time and until she delivered a child in April 2013.

14.

5

Starting in the month of September 2012, and shortly after likely learning of her pregnancy, Roger Priest made numerous and repeated requests to Nick Adams to ask Ms. Carroll when she was leaving in light of her pregnancy.  Nick Adams did so. These repeated requests, which appeared to be rooted in unfounded sex-based stereotypes, continued with regularity until around the end of September. In light of the repeated inquiries, these comments were impermissible harassment based on sex and pregnancy and created a hostile work environment.

15.

In the beginning of October 2012, Ms. Carroll requested a meeting, and met with Roger Priest and Jimmy Taylor to complain about the sex and pregnancy based harassment and discrimination she was experiencing.  She did so.  Her complaints were to oppose the unlawful sex and pregnancy based harassment and discrimination she was experiencing. Shortly thereafter, Roger Priest unusually denied an annual leave request of Ms. Carroll that had been previously approved. The denial was an adverse action. He did this to retaliate against her for opposing his unlawful harassment.  He also did this to drive her from the workplace in light of his misguided assumptions about her pregnancy and gender.

16.

Later that month, Priest, Jimmy Taylor, and Sam Heaton met with Ms. Carroll. During that meeting, Ms. Carroll complained about the unlawful sex and pregnancy based harassment and discrimination she was experiencing. Her complaints were to oppose the unlawful sex and pregnancy based harassment and discrimination she was experiencing.

17.

Shortly thereafter, and in retaliation for her protected oppositional activity and to drive her from the workplace in light of her pregnancy, Roger Priest also told many of Ms. Carroll's co-workers to not help Ms. Carroll with her work or accommodate her, requiring them to treat her differently. Through these orders, through increased scrutiny of Ms. Carroll continuing until she left on leave, through subjecting Ms. Carroll to different terms and conditions of employment, and through harassing comments and a hostile work environment continuing until she left on leave, Priest also subjected Ms. Carroll to disparate treatment and harassment on the basis of sex and/or pregnancy.

18.

On or around Tuesday, November 27, 2012, Mr. Priest told Ms. Carroll "if you were a man, I would have told you a long time ago that you can't do your job."

He also made numerous other gender-based derogatory comments to Ms. Carroll on other occasions.

19.

On Tuesday, November 27, 2012, Ms. Carroll filed a harassment complaint with Anita Banks, Human Resources Representative. Cobb County failed to take sufficient action in response to her complaint, or correct promptly the harassing behavior.

20.

In the middle of December 2012, Ms. Carroll's employer forcibly placed her on mandatory medical leave because of her sex and pregnancy, and in retaliation for her protected activity. Ms. Carroll was told by Chuck Baird, Chief of Training, and Nick Adams, Lieutenant, that she was being sent home for failing to perform an assignment, but this reason was pretext for sex and pregnancy discrimination, including retaliation. At the time she was sent home on mandatory medical leave, Ms. Carroll was performing her job satisfactorily.  She should not have been placed on forced medical leave.

21.

In so doing, Cobb County forced Ms. Carroll on involuntary leave when she did not have a "serious health condition" that precluded her from working.

22.

Beginning in January 2012 and continuing until present, the Department interfered with Ms. Carroll's FMLA rights and ability to use her leave.

23.

On January 7, 2013, Ms. Carroll sent an email to various people including Defendant Heaton, Roger Priest, and Anita Banks stating, among other things, that "[d]ue to the lack of attentiveness towards me and my concerns of harassment over the past few months, I do not feel safe working. I feel that my health and safety will be compromised. I feel I have been isolated and it causing me significant stress and emotional anguish. It is apparent after being ignored through the holidays, after I submitted the appropriate documents, that I have no support or resources to help me. Please provide me with the proper medical leave information and I will return it promptly."

24.

However, Cobb County failed to respond adequately to that request and later requests.  Cobb County demanded Ms. Carroll attend a meeting in January. Also, Cobb County failed to provide sufficient information about Ms. Carroll's FMLA rights and responsibilities and entitlements within a reasonable time after notice of

leave was given. Cobb County failed to timely designate the leave as FMLA qualifying, actually prejudicing Ms. Carroll's ability to make decisions or take actions regarding the FMLA leave. Cobb County did this after explicit reminder of their legal obligations. Cobb County's disregard for the law actually harmed Ms. Carroll because, among other things, it made working conditions intolerable, as Ms. Carroll was left for months to speculate as to how she should proceed, or why Cobb County refused to comply with the FMLA or provide her appropriate notices and designations. It also dissuaded her from returning because it was another example of Cobb County's willingness to flagrantly violate the law. Further, in June 2013, Cobb County denied Ms. Carroll child care leave to which she would have been entitled but for Cobb County's interference.

25.

On or after January 7, 2013, Ms. Carroll was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115(b)–(e) and 29 C.F.R. § 825.120(a)(4).

26.

On June 11, 2013, nearly six months later, in response to Ms. Carroll's request in May 2013 to use leave for the birth of her child, Cobb County told Ms. Carroll

she had been granted FMLA leave for the first twelve weeks after December 14, 2012; however, because Cobb County had forced her on medical leave and FMLA leave, Ms. Carroll was unable to use her full 12 weeks of leave from the point she requested it because Cobb County had wrongfully forced her to use FMLA leave in the past.

27.

On June 11, 2013, Cobb County denied Ms. Carroll additional leave, which would have been FMLA qualifying, and directed she report to a new location after returning for leave on July 7, 2013: "Station 9."  Because Cobb County had failed to timely designate Ms. Carroll's prior leave as FMLA qualifying and of the concomitant prejudice to Ms. Carroll's ability to proceed while on leave, she was entitled to additional time to care for her child, so the denial was wrongful. Further, the transfer was to an undesirable location and the person to whom Ms. Carroll was to report told her husband, another Firefighter, that he knew the Department was punishing Ms. Carroll with the transfer.

28.

The transfer to "Station 9" was seen as punishment by multiple Firefighters, and would likely dissuade employees of Cobb County Fire Department from filing

11

EEOC Charges or engaging in protected activity under the FMLA. It was an adverse action.

30.

29.

Further, because of the transfer, interference with FMLA rights, harassment, and other violations of Title VII, Cobb County constructively discharged Ms. Carroll and terminated her on July 7, 2013, because of her sex (pregnancy) and protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.  In light of the foregoing, a reasonable person would have felt they had no choice but to quit.

## COUNT I

### Sex and Pregnancy Harassment in Violation of Title VII (and the Pregnancy Discrimination Act) — Hostile Work Environment

30.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

31.

Beginning in September 2012, and continuing thereafter, Plaintiff's supervisor, Roger Priest, subjected Plaintiff to harassment due to her gender. Plaintiff was obligated to work in an atmosphere that was hostile by virtue of

unsolicited and unwelcome comments about Plaintiff's pregnancy, including, but not limited to, at points, near daily inquiries into whether Plaintiff should go on leave, and comments like that comment that if Plaintiff were a man, Mr. Priest would have fired her long ago. Plaintiff was also denied leave for which she had previously been approved. She was also scrutinized much more than her male counterparts and non-pregnant counterparts. This harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a working environment that was intimidating, insulting, and abusive to Plaintiff, and, for that matter, to any objectively reasonable person.

32.

Because of its failure to exercise reasonable care to prevent and/or take prompt and remedial action, and its deliberate indifference to such hostile conduct, Cobb County has intentionally engaged in unlawful employment practices in violation of Title VII.

33.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of sex.

34.

13

As a result of Cobb County's unlawful actions, Ms. Carroll has suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities compensable under Title VII and the Pregnancy Discrimination Act.

35.

Cobb County acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Carroll.

## COUNT II

## Sex and Pregnancy Discrimination in Violation of Title VII (and the Pregnancy Discrimination Act) — Leave Denial

36.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

37.

In October 2012, Roger Priest unusually denied an annual leave request of Ms. Carroll that had been previously approved.  He did so because of Plaintiff's sex and pregnancy.

38.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of sex.

39.

As a result of Cobb County's unlawful actions, Ms. Carroll has suffered emotional distress, inconvenience, loss of benefits, humiliation, and other indignities compensable under Title VII and the Pregnancy Discrimination Act.

40.

Cobb County acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Carroll.

## COUNT III

**Retaliation in Violation of Title VII (and the Pregnancy Discrimination Act) — Leave Denial**

41.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

42.

Shortly after learning Ms. Carroll had called a meeting and opposed the sex and pregnancy discrimination he was directing, Roger Priest unusually denied an

annual leave request of Ms. Carroll that had been previously approved. He did this to retaliate against her for opposing his unlawful harassment, and targeting him with her complaints. In so doing, Cobb County retaliated against Ms. Carroll for engaging in protected activity in violation of Title VII and the Pregnancy Discrimination Act.

43.

As a result of Cobb County's unlawful actions, Ms. Carroll has suffered emotional distress, inconvenience, loss of benefits, humiliation, and other indignities compensable under Title VII and the Pregnancy Discrimination Act.

44.

Cobb County acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Carroll.

## COUNT IV

**Sex and Pregnancy Discrimination in Violation of Title VII (and the Pregnancy Discrimination Act) — Forced Medical Leave**

45.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

46.

In the middle of December 2012, Defendants discriminated against Ms. Carroll by forcing her on medical leave based upon her sex and because of her pregnancy when she could still work. This denied Ms. Carroll equal employment opportunities because of her sex and pregnancy and exhibits malice or reckless indifference to the federally protected rights of Ms. Carroll. The reason for the forced medical leave was pretext for sex and pregnancy discrimination.

47.

Defendant Cobb County's discriminatory actions violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Pregnancy Discrimination Act.

48.

As a result of Cobb County's unlawful actions, Ms. Carroll has suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities compensable under Title VII, for which Cobb County is liable.

49.

Cobb County acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Carroll.

## COUNT V

**Retaliation in Violation of Title VII (and the Pregnancy Discrimination Act)**

**— Forced Medical Leave**

50.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

51.

In October, and as explained above, Ms. Carroll attended meetings where she opposed sex and pregnancy discrimination and harassment, and she filed an internal complaint in November.  This constituted protected activity.

52.

Shortly thereafter, Cobb County retaliated against Ms. Carroll for engaging in protected activity in violation of Title VII and the Pregnancy Discrimination Act by eventually forcing her on medical leave after engaging in a pattern of actions intimating a retaliatory intent.  The justification for the forced medical leave was pretext for retaliation.

53.

As a result of Cobb County's unlawful actions, Ms. Carroll has suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and

18

other indignities compensable under Title VII and the Pregnancy Discrimination Act.

54.

Cobb County acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Carroll.

**COUNT VI**

**Interference with FMLA Leave**

55.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

56.

On and after January 7, 2013, and until the birth of her child, Ms. Carroll was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115(b)–(e) and 29 C.F.R. § 825.120(a)(4).

57.

In the middle of December, Cobb County forced Ms. Carroll on involuntary leave when she did not have a "serious health condition" that precluded her from working.

58.

Ms. Carroll sought FMLA leave at a later point but was unable to use the leave because Cobb County had wrongfully forced her to use FMLA leave in the past.

59.

On January 7, 2013, Ms. Carroll requested leave information.  However, Cobb County failed to respond adequately under the FMLA.  In so doing, Cobb County made misleading statements about leave in an email in the middle of January from Chief Heaton. Cobb County also demanded she attend a meeting in January.  Cobb County also failed to provide sufficient information about FMLA within a reasonable time after notice of leave was given.  Cobb County also failed to timely designate the leave as FMLA qualifying, actually prejudicing Ms. Carroll. Cobb County did this after explicit notice was provided to them about their obligations. Cobb County's disregard for the law actually harmed Ms. Carroll because it made working conditions intolerable, as Ms. Carroll was left for months to speculate as to why Cobb County refused to comply with the FMLA or provide her appropriate notices and designations, and for the reasons stated previously. Further, Cobb County's failure to properly designate leave as FMLA qualifying, failure to provide required notice, and related prejudice led to Cobb County wrongfully denying Ms.

Carroll leave she requested in May 2013, which otherwise would have been qualified FMLA leave to care for a recently born child.

60.

Cobb County's actions in interfering with Ms. Carroll's FMLA leave were committed with reckless disregard for her right to take up to 12 work weeks of leave time for a serious health condition and/or the care of her child and in violation of the FMLA.

61.

The effect of Cobb County's actions has been to deprive Ms. Carroll of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her solely because of her right to leave under the FMLA.

62.

As a result, Ms. Carroll is entitled to both equitable and monetary relief for Cobb County's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

63.

Ms. Carroll is also entitled to liquidated damages for the violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **COUNT VII**

### **Retaliation for Exercise of FMLA Rights — Transfer**

64.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

65.

On or after January 7, 2013, Ms. Carroll was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115(b)–(e) and 29 C.F.R. § 825.120(a)(4).

66.

On January 7, 2013, Ms. Carroll requested FMLA leave.  At the end of May 2013, Ms. Carroll requested leave for breastfeeding, which would have otherwise been qualified FMLA leave to care for a recently born child.

67.

Shortly, before the first day Ms. Carroll was scheduled to return to work after requesting FMLA leave, Cobb County informed Ms. Carroll she had been transferred to an another location. This location was undesirable, and greatly would have expanded Ms. Carroll's commute, and taken her from her current station where she worked with her husband, and where it would have been significantly easier to make child care arrangements.  Cobb County transferred Ms. Carroll to this assignment and took this adverse action against Ms. Carroll because she engaged in protected activity under the FMLA.  Such transfer would dissuade a reasonable person from requesting FMLA leave or engaging in similar protected activity.

68.

Cobb County's actions in retaliating against Ms. Carroll's for her FMLA protected activity were committed with reckless disregard for her right to take up to 12 work weeks of leave time for a serious health condition and/or the care of a recently born child and in violation of the FMLA.

69.

The effect of Cobb County's actions has been to deprive Ms. Carroll of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her solely because of her right to leave under the FMLA.

70.

As a result, Ms. Carroll is entitled to both equitable and monetary relief for Cobb County's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

71.

Ms. Carroll is also entitled to liquidated damages for the violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **COUNT VIII**

**Retaliation for Exercise of FMLA Rights — Constructive Discharge**

72.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

73.

On and after January 7, 2013, and until the birth of her child, Ms. Carroll was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

74.

On January 7, 2013, Ms. Carroll requested FMLA leave.  She again requested leave in May 2013, which was FMLA qualifying as explained above.

75.

On or around, July 7, 2013, the very first day Ms. Carroll was scheduled to return to work after requesting FMLA leave, Cobb County constructively discharged Ms. Carroll by imposing working conditions that were so intolerable that a reasonable person in Ms. Carroll's position would have been compelled to resign. The conditions were imposed because of Ms. Carroll's protected activity under the FMLA statute. The transfer was to an undesirable location to punish Ms. Carroll. Cobb County transferred Ms. Carroll to an undesirable location to work, shortly after wrongfully denying her leave request, willfully interfering with Ms. Carroll's FMLA rights by forcing her on medical leave and refusing to explain her rights and responsibilities while she was on maternity leave, and violating Title VII by failing to stop and/or prevent harassment and forcing her on medical leave.

76.

Around the time Ms. Carroll was to be transferred, the person to whom she would report told Ms. Carroll's husband, Andrew Carroll, that that person knew Ms. Carroll was being transferred as a punishment. The transfer was seen as a punishment among other Firefighters.

77.

Cobb County's actions in retaliating against Ms. Carroll's for her FMLA protected activity were committed with reckless disregard for her right to take up to 12 work weeks of leave time for a serious health condition and/or care of a recently born child in violation of the FMLA.

78.

The effect of Cobb County's actions has been to deprive Ms. Carroll of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her solely because of her right to leave under the FMLA.

79.

As a result, Ms. Carroll is entitled to both equitable and monetary relief for Cobb County's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

80.

Ms. Carroll is also entitled to liquidated damages for the violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a trial by jury and that the following relief is granted:

a. a declaratory judgment that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k);

b. a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII and the Pregnancy Discrimination Act;

c. a declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the FMLA;

d. an injunction prohibiting Defendant from engaging in unlawful employment practices in violation of the FMLA;

e. full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

f. reinstatement to Plaintiffs former position with Defendant at the same pay grade, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits and pension;

g.  actual damages for any lost income;

h.  compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

i.  liquidated damages pursuant to 29 U.S.C. § 2617;

j.  punitive damages against Defendant;

k.  attorneys' fees and costs; and

l.  all other and further relief as this Court deems just and proper.

Respectfully submitted the 8th day of August, 2013.

SOUTHWORTH, P.C.

/s/ Shaun C. Southworth
Shaun C. Southworth
Georgia Bar No. 959122
Southworth, P.C.
1100 Peachtree ST NE, Suite 200
Atlanta, GA 30309

voice - 404.692.5715
facsimile - 404.393.4129

*Attorney for Ms. Alison Carroll*